UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | |
|---|---|
| **ERMA WILSON** | § |
| | § |
| VS. | §     NO: 7:22-CV-00085 |
| | § |
| **MIDLAND COUNTY, TEXAS** | § |
| **WELDON "RALPH" PETTY, JR.,** | § |
| sued in his individual capacity, and | § |
| **ALBERT SCHORRE, JR.,** sued in his | § |
| individual capacity | § |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12(B)(6) MOTION TO DISMISS

    Respectfully submitted,


    By:   /s/ R. Layne Rouse
    R. LAYNE ROUSE
    State Bar No. 24066007
    lrouse@shaferfirm.com
    MILES NELSON
    State Bar No. 14904750
    mnelson@shaferfirm.com

    **SHAFER, DAVIS, O'LEARY & STOKER**
    P.O. Drawer 1552
    Odessa, TX 79760-1552
    (432) 332-0893
    (432) 333-5002 – Facsimile

    **ATTORNEYS FOR THE MIDLAND COUNTY DEFENDANTS**

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this document has been filed via the Court's electronic filing system and, by such, is being served on this 8th day of June, 2022, on all counsel of record.

                                              */s/ R. Layne Rouse*
                                              R. Layne Rouse

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW DEFENDANTS, MIDLAND COUNTY, TEXAS, ("Midland County" or the "County") and WELDON "RALPH" PETTY, JR. ("Petty") (collectively "Defendants"), and file this reply in support of their Rule 12(b)(6) motion to dismiss. In support hereof, Defendants would respectfully show the Court as follows:

## I.
## REPLY

Plaintiff's response confirms that her position is untenable. To Plaintiff, Petty's mere dual employment status "as an ADA and law clerk violates" her due process rights and invalidates her conviction ***regardless*** of what involvement Petty had with her case.[1] Apparently, Plaintiff's position is *every* criminal conviction in Midland County that occurred during Petty's fifteen to twenty years of "dual employment" is invalid, and all such persons are now entitled to collaterally attack their convictions by § 1983.[2] This is not the law. For each of the reasons stated herein and in Defendants' motion, the Court should dismiss Plaintiff's claims in their entirety.

### A. *Under Fifth Circuit Precedent, Heck Bars Plaintiff's Claims*

Based on controlling Fifth Circuit authority, *Heck* bars Plaintiff's claims. By her § 1983 claims, Plaintiff is directly attacking her criminal conviction that has not been invalidated or otherwise called into question.[3] This violates *Heck*'s bar.

Plaintiff claims that *Heck* only applies to persons in custody, but this is not the law in the Fifth Circuit. That Plaintiff "is no longer a prisoner 'in custody' for [her] offense and thus may

---

[1] "Simply, there can be no doubt that every reasonable prosecutor would have fair notice that simultaneously working as an ADA and law clerk violates the Constitution's guarantee of due process." Doc. No. 21, p. 19.
[2] Plaintiff pleads that Petty served in this "dual employment" role from 2001 to 2014, 2017-2018, and retired in 2019. Doc. No. 1 ¶¶63-64, 80-81.
[3] As demonstrated by Defendants' motion, the Texas Court of Criminal Appeals opinion cited by Plaintiff in her Complaint did not invalidate or call into question Plaintiff's criminal conviction. Plaintiff does not argue otherwise in her response.

not seek habeas relief does not excuse [her] from the 'favorable termination' rule of *Heck*." *Morris v. McAllester*, 702 F.3d 187, 192 (5th Cir. 2012) (citing *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000)).

### 1. *Fifth Circuit Precedent Aligns with Heck and its Rational.*

The Fifth Circuit's view aligns with the majority opinion in *Heck*. According to *Heck*, § 1983 was never intended to be used as a vehicle to collaterally attack criminal convictions. *See Heck v. Humphrey*, 512 U.S. 477, 484-87 (1994). Under *Heck*, it is not a matter of the § 1983 claim becoming "ripe" upon release. Instead, a convict has "no cause of action under § 1983" to challenge the conviction **unless and until** the conviction is somehow invalidated. *Id.* at 489-90.

This understanding of § 1983 upholds "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 486. The "favorable termination" rule also "avoids parallel litigation", precludes the "creation of two conflicting resolutions arising out of the same or similar transaction", and it addresses "concerns for finality and consistency", all reasons the Court "has generally declined to expand opportunities for collateral attack." *Id.* 484-85. *Heck* concluded this rational "applies to § 1983 damage actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement". *Id.* at 486. The Fifth Circuit's holding is consistent with these principles.

### 2. *Plaintiff's Position is Inconsistent with Heck and § 1983's Purpose.*

Plaintiff's position is inconsistent with *Heck* and its rationale. To Plaintiff, the convict's release creates a cause of action under § 1983 that allows the convict to challenge any alleged constitutional violation with impunity, regardless of its impact on a state court criminal judgment. There is no support for such an interpretation of § 1983 under *Heck*. This is also in direct conflict

with the concerns *Heck* sought to avoid in interpreting § 1983 (collateral attacks on criminal judgments by civil torts, inconsistency in judgments, non-finality).

 Such an interpretation is also inconsistent with how the Supreme Court has interpreted § 1983's history and purpose.  Taking Plaintiff's argument to its logical extreme, through § 1983, every state criminal judgment would be subject to federal review upon the convict's release.  This would be true regardless of the length of time spent incarcerated, the result of the convict's direct appeals, including any appeal to the United States Supreme Court, or the convict's exhaustion of any other state or federal remedy while incarcerated.  Such a dramatic altering in the federal-state balance respecting federal review of a state's criminal judgments diverges from "[t]he history and purpose of 42 U.S.C. § 1983", which "do not indicate that Congress wished to alter the federal-state balance through § 1983."  *See Hill v. Thomas*, No. CV W-07-CA-159, 2008 WL 11454788, at *1 (W.D. Tex. Feb. 21, 2008) (citing *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 63-70 (1989), *report and recommendation adopted*, No. W-07-CV-159, 2008 WL 11454780 (W.D. Tex. Apr. 30, 2008), *aff'd*, 326 Fed. Appx. 736 (5th Cir. 2009). [4]

   3. *No Intervening Authority Supersedes Fifth Circuit Precedent.*

 Contrary to Plaintiff's argument, there is no intervening authority that supersedes the Fifth Circuit's precedent.  Plaintiff incorrectly elevates the Supreme Court's use of one word from a footnote in its 2004 "per curiam" opinion *Muhammad v. Close* as superseding Fifth Circuit precedent.  Plaintiff is mistaken.

---

[4] Such an interpretation would also make § 1983 a post-release substitute for a federal habeas challenge unhinged from the procedural limitations imposed by Congress in the federal habeas statute.

In *Muhammad,* the Court held that the *Heck* bar did not apply to a plaintiff's claims because the plaintiff was not challenging his conviction. *Muhammad*, 540 U.S. at 751-52. Citing concurring opinions from *Heck* and *Spencer v. Kemna*, 523 U.S. 1 (1998), the Court noted that

> [Although] Members of the Court have expressed the view that unavailability of habeas for other reasons [i.e. post-release] may also dispense with the *Heck* [favorable termination] requirement[,] [t]his case is no occasion to settle the issue.

*Muhammad*, 540 U.S. at 752 n.2 (citations omitted).

Contrary to the Court's statement, Plaintiff incorrectly reads the word "settle" as the "occasion" to supersede Fifth Circuit precedent. Doc. No. 21, p. 10-11, & n.4 (citing *See Muhammad v. Close*, 540 U.S. 749, 752 n.2 (2004)). This is the *opposite* of what the *Muhammad* Court said. The Court said *Muhammad* was "no occasion" to "settle" an issue not squarely before the Court. The better reading of the word "settle" is "address", which reflects what the Court said it was doing and did. The Court took "no occasion" in *Muhammad* to address the arguments raised in the concurring opinions. Plaintiff's reading of the footnote as superseding Fifth Circuit authority is inconsistent with Supreme Court's stated intent.

### 4. *The Fifth Circuit Rejects Plaintiff's Arguments.*

Not only are Plaintiff's arguments misplaced, the Fifth Circuit has already considered and squarely rejected each of them. As noted in her response, Plaintiff's position originates from the concurring opinions in *Heck v. Humphrey* and *Spencer v. Kemna*. *See Heck v. Humphrey*, 512 U.S. 477, 501–02 (1994); *Spencer v. Kemna*, 523 U.S. 1, 18 (1998). Following *Spencer*, the circuits split regarding whether the "favorable termination" requirement in *Heck* bars § 1983 actions after a prisoner is released. The Fifth Circuit directly addressed the circuit split and the arguments raised in concurring opinions in a 2000 opinion styled *Randell v. Johnson*, 227 F.3d 300 (5th Cir. 2000). In *Randell*, the Fifth Circuit rejected Plaintiff's arguments,

including the argument that *Spencer*'s 4-4-1 opinion changed the law, and concluded that the favorable termination requirement applies to convicts post-release. *Id.* at 301.[5]

The Fifth Circuit has also addressed, and rejected, Plaintiff's argument based on the word "settle" in the *Muhammad* footnote, as Plaintiff concedes. Doc. No. 21, p. 11 n.4 (citing *Black v. Hathaway*, 616 Fed. Appx. 650 (5th Cir. 2015)). Contrary to Plaintiff's argument, the Fifth Circuit has never indicated that *Randell* was incorrectly decided or that *Muhammad* "unsettled" Fifth Circuit law. Instead, since *Muhammad*, the Fifth Circuit has consistently held in both published and unpublished opinions that the *Heck* favorable termination rule applies post-release. [6] Accordingly, Fifth Circuit precedent controls. Plaintiff's claims are barred by *Heck* and should be dismissed.

### B. *Plaintiff Fails to State a Due Process Claim*

Dismissal is also appropriate because Plaintiff fails to allege a viable cause of action. To assert a due process claim, Plaintiff's burden is to identify the protected life, liberty, or property interest at issue and prove a governmental action deprived Plaintiff of such protected interest. *See Baldwin v. Daniels,* 250 F.3d 943, 946 (5th Cir. 2001) (procedural due process); *Brennan v. Stewart,* 834 F.2d 1248, 1257 (5th Cir. 1988) (substantive due process).[7] When the protected interest identified is the right to a "fair trial", whether the claim is based upon an alleged ineffective assistance of counsel, or some act of judicial or prosecutorial misconduct, plaintiff's burden is to

---

[5] Four circuits, including the Fifth Circuit, hold that the "favorable termination" rule in *Heck* applies to a convict post-release. *See Entzi v. Redmann,* 485 F.3d 998, 1003 (8th Cir. 2007); *Williams v. Consovoy,* 453 F.3d 173, 177–78 (3d Cir. 2006); *Figueroa v. Rivera,* 147 F.3d 77, 81 n. 3 (1st Cir. 1998)

[6] *See, e.g.*, *Wiley v. Stephens*, 644 Fed. Appx. 303, 304 (5th Cir. 2016) (upholding dismissal under *Heck* "notwithstanding that Wiley was no longer in custody"); *Black v. Hathaway*, 616 Fed. Appx. 650, 653–54 (5th Cir. 2015) (same); *Morris v. McAllester*, 702 F.3d 187, 192 (5th Cir. 2012) (same).

[7] Plaintiff's Complaint fails to identify whether she alleges procedural or substantive due process violations. In her response, Plaintiff alludes to her "due process" claim as being one for "procedural due process", but her characterization of her claim appears to be driven more by her interest in avoiding identifying the actions that caused her injury as opposed to an analysis of whether she seeks to enforce substantive or procedural rights. *See* Doc. No. 21, p. 11 (citing *See, e.g., Hill v. City of Pontotoc*, 993 F.2d 422, 425–26 (5th Cir. 1993)).

demonstrate how such misconduct deprived Plaintiff of her protected interest, i.e., caused her harm.[8] Plaintiff fails to show how any alleged misconduct caused her to be deprived of a fair trial, resulting in the alleged improper conviction.

In her apparent attempt to side-step immunity issues raised by Petty, Plaintiff identifies Petty's "decision" to work as a dual employee as the governmental "act" that deprived her of a fair trial (or caused her harm).[9] Petty's "decision" to work as a dual employee, however, merely evidences a *potential* conflict of interest, as opposed to an actual conflict that influenced Plaintiff's trial. When the Fifth Circuit has previously addressed "dual employment" situations potentially impacting one's right to a fair trial, the Fifth Circuit has required the plaintiff to demonstrate how an actual conflict prejudiced a plaintiff.[10] To the extent Plaintiff complains that her injury was her inability to object to the alleged "conflict" potentially created by Petty's dual employment, Plaintiff still must demonstrate harm.[11] Where a plaintiff is prevented from objecting to a potential

---

[8] *See, e.g., United States v. Olano*, 507 U.S. 725, 739 (1993) (requiring showing that jury misconduct "was actually prejudicial" or "influenced the verdict"); *United States v. Ebron*, 683 F.3d 105, 140 (5th Cir. 2012) ("The prejudice step of the inquiry sets a high bar: Improper prosecutorial comments constitute reversible error only where the defendant's right to a fair trial is substantially affected." (internal quotation and citation omitted)); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *United States v. Bermea,* 30 F.3d 1539, 1569 (5th Cir. 1994) (reviewing claims of judicial misconduct, and holding the court's role is to "determine whether the judge's behavior was so prejudicial that it denied the defendant a fair, as opposed to a perfect, trial.").

[9] Plaintiff claims it was Petty's "decision to work as a law clerk" as opposed to a specific act by Petty in Plaintiff's trial that violated her rights. *See* Doc. No. 21, p. 16-17.

[10] *See, e.g.*, *Moreland v. Scott,* 175 F .3d 347, 348-49 (5th Cir. 1999) (no actual conflict where defense counsel knew that he was running for district attorney in the next election; to be entitled to habeas relief, the petitioner had to show that counsel's performance was deficient under *Strickland* ); *Mitchell v. Maggio,* 673 F.2d 77, 80-81 (5th Cir. 1982) (deciding there is no conflict of interest where an attorney is employed as a prosecutor and is also in a pool of potential defense attorneys).

[11] Plaintiff attempts to characterize her claim as a "procedural" due process claim. This is unavailing. Procedural due process merely entitles someone to notice and an opportunity to be heard regarding an alleged deprivation of a protected interest. *Matthias v. Bingley*, 906 F.2d 1047, 1051-52 (5th Cir. 1990) ("The Due Process Clause permits persons whose interests may be adversely affected by government decisions to participate in those decisions."). As to the "dual employment" claim, Plaintiff has no "interest" in Petty's employment status. *See Chavez v. Brownsville Indep. Sch. Dist.*, 135 Fed. Appx. 664, 680 (5th Cir. 2005) ("Plaintiff does not cite to any Texas cases, nor has the Court unearthed any, in which the courts recognized a property interest in the award of a government contract."). At best, Plaintiff's right was an opportunity to object to an alleged potential conflict of interest purportedly created by Petty's dual employment. As demonstrated above, to prove a violation of this "right" requires that Plaintiff demonstrate how the conflict harmed Plaintiff.

conflict, the Fifth Circuit requires the plaintiff to show (1) the defendant was in actual conflict (as opposed to a potential conflict), and, (2) the conflict prejudiced plaintiff's right to a fair trial. *See United States v. Simpson*, 645 F.3d 300, 310 (5th Cir. 2011) (applying to a claim for ineffective assistance of counsel). Plaintiff's allegations fail to meet these standards.

Plaintiff fails to show an *actual* conflict created by the dual employment decision. For example, Plaintiff does not claim that Petty acted as both the prosecutor and law clerk in her case, only that he performed law clerk duties while remaining on the district attorney's payroll.[12] Plaintiff also fails to allege that any conflict of interest influenced her case. The only allegation Plaintiff offers as evidence of a *potential* improper influence on Plaintiff's trial involved the trial court's denial of Plaintiff's motion to suppress. Doc. No. 1, ¶¶124-26. However, as discussed in Defendants' motion, Defendants' actions, if any, *did not* deprive Plaintiff the "right" to exclude the evidence because Plaintiff later *agreed* to the evidence's admission. Other than conclusory statements or speculation on what Petty "may" have done, Plaintiff fails to allege instances how an actual conflict of interest influenced her trial. Plaintiff's due process claims should be dismissed for failure to state a claim.

### C. *Plaintiff's Limitations Claims Have Expired.*

Plaintiff's claims should also be dismissed because the applicable statute of limitations has either not accrued or it has expired.[13] Plaintiff argues her claims accrued when she had reason to know of Petty's dual employment. In federal law, though, Plaintiff's claims accrue upon discovery of her injury. *Univ. of Tex. at Austin*, No. 1:19-CV-1202-RP, 2022 WL 958386, at *3 (W.D. Tex.

---

[12] Plaintiff concedes Petty did not prosecute her case. Doc. No. 21, p. 17 (arguing that Petty's dual role allowed the *opportunity* to "advise" the lead prosecutor). Plaintiff appears to allege Petty may have been involved in drafting orders in her case, which Defendants deny, but Plaintiff fails to show how that resulted in an "actual" conflict when he was not assigned to work on her case. Moreover, to the extent Plaintiff sues Petty for drafting orders, memorandum opinions, or other actions as a "law clerk", Petty is immune from suit for the reasons discussed in Defendants' motion.
[13] As explained above, under *Heck*, Plaintiff's claim of her wrongful conviction via denial of a fair trial does not exist, thus, accrue until her conviction is invalidated.

Mar. 30, 2022). Plaintiff's "injury" was not Petty's employment "decision". Her injury, if any, was the alleged improper conviction purportedly caused by an alleged conflict of interest arising from Petty's "dual employment." Plaintiff has been aware of her conviction since 2001 when her judgment was entered. Doc. No. 1, ¶111. Plaintiff has been aware of her injury for years.

Limitations has long-since expired as no tolling applies to Plaintiff's claims under Texas law. *Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980, 984 n.8 (5th Cir. 1992) ("Where a state statute of limitations is borrowed, the state's rules for tolling the statute are borrowed as well." (citing and quoting *Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 485 (1980)). In Texas, limitations may be tolled under the discovery rule, which may apply to inherently undiscoverable injuries, or for a defendant's fraudulent concealment of the injury or inducement of a plaintiff to not file suit (referred to as equitable tolling). *See, e.g.*, *Petras v. Mole*, No. 3:11-CV-1402-N, 2013 WL 12362098, at *2-4 (N.D. Tex. Jan. 31, 2013) (citing and applying Texas law). Plaintiff's injuries were not "inherently undiscoverable". As a matter of law, Plaintiff was aware of her conviction once the judgment was entered (it was not inherently undiscoverable). Plaintiff fails to plead any facts suggesting there was a fraudulent concealment or that she was wrongful induced to not file suit for twenty years.[14]

Plaintiff claims she waited more than twenty years before bringing a claim because she did not "know" of Petty's dual employment until much later. Plaintiff's argument is misplaced. "Once a claimant learns of a wrongful injury the statute of limitations begins to run, even if the claimant does not yet know 'the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.'" *Petras v. Mole*, No. 3:11-CV-1402-N, 2013 WL 12362098, at *2 (N.D. Tex. Jan. 31, 2013) (quoting *Exxon Corp. v. Emerald Oil & Gas Co., LLC*, 348 S.W.3d

---

[14] To the contrary, Plaintiff alleges Midland County's district attorney notified the public of the dual employment issue. Doc. No. 1., ¶93-95.

194, 207 (Tex. 2011)).  Moreover, under Texas law, Plaintiff had notice of the alleged cause of her injury and the party responsible for it.  In Texas, "[a] person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records."  *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981).  Plaintiff alleges that examination of "[t]he County's records show that Petty invoiced Judge Hyde for work he performed on [Plaintiff's case] while he was employed by the DA's office."  Doc. No. 1, ¶ 110.  These same public records were subject to disclosure and examination via an open records request.  *See generally* Tex. Gov't Code ch 552; *see Tex. Comptroller of Pub. Accounts v. Attorney Gen. of Tex.*, 354 S.W.3d 336, 337 (Tex. 2010) (addressing public record request for "payroll database for state employees.").  Plaintiff implicitly concedes that she had constructive notice of Petty's "dual employment" via public records, citing to the *USA Today* article that provided Plaintiff notice of Petty's dual employment months before she had "actual knowledge" of it.  *See* Doc. No. 1, ¶ 110; Doc. No. 21, p. 20.  For limitations purposes, Plaintiff has no excuse for waiting over twenty years before filing an action.  Plaintiff's claims should be dismissed.

### D. *Immunity Bars Plaintiff's Claims.*

Dismissal is also appropriate because immunity bars Plaintiff's claims.  As raised in Defendants' motion, prosecutorial and judicial immunity bars Plaintiff's claims to the extent Plaintiff sues Petty for work performed as a law clerk or in prosecuting her case.  In her response, Plaintiff suggests that she is not claiming Petty prosecuted her case.  *See* Doc. No. 21, p. 17.  To the extent Plaintiff sues Petty for any actions taken as a law clerk, Petty is entitled to absolute immunity.  Regardless of whether the alleged acts involved consulting with the judge, conducting legal research, drafting orders, or drafting the judgment, Petty performed such work as a law clerk, for which Petty is entitled to absolute immunity.

Dismissal is also appropriate based on qualified immunity. In her response, Plaintiff shifts the focus of her complaint from any specific act committed by Petty in her trial to Petty's "decision" to work as a law clerk and ADA. With respect to a claim based on such "decision" Petty is entitled to qualified immunity. The burden is on Plaintiff to plead facts capable of rebutting the application of qualified immunity. *Spears v. McCraw*, 20-50406, 2021 WL 3439148, at *1 (5th Cir. Aug. 5, 2021) (internal citations and quotations omitted). "The doctrine of qualified immunity shields government officials from civil liability as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rutland v. Pepper*, 404 F.3d 921, 923 (5th Cir. 2005) (internal quotations omitted). As discussed above, a dual employment creating a *potential* conflict of interest does not in itself violate a person's right to a fair trial. *See United States v. Simpson*, 645 F.3d 300, 310 (5th Cir. 2011). Hence, the law was not clearly established that an assistant district attorney's "decision" to also work as a law clerk, standing alone, violates a person's constitutional interest to a fair trial. To the extent Plaintiff sues Petty for this "decision", Petty is entitled to qualified immunity. Plaintiff's claims should be dismissed.